UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE ROBINSON BURRELL, | No. C-13-1109 EMC (pr) |
|     Petitioner, | |
|     v. | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| GREG LEWIS, Warden, | |
|     Respondent. | |
| _____/ | |

## I. INTRODUCTION

Dwayne Robinson Burrell filed this *pro se* action seeking a writ of habeas corpus under 28 U.S.C. § 2254. In his petition, he contends that he received ineffective assistance of counsel during sentencing proceedings. The matter is now before the Court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition is **DENIED**.

## II. BACKGROUND

Nine Santa Clara University students lived in a six-bedroom home on Lafayette Way in Santa Clara. On October 9, 2009, while resident Brian Elser was away from the home attending classes and three other residents were home, resident Timothy Hill "saw defendant standing inside Elser's doorway. He confronted defendant. Defendant shoved Hill to the ground and ran away. The police later apprehended defendant in possession of Elser's laptop computer and other property." Resp. Ex. 8 (California Court of Appeal Opinion) at 3.

Mr. Burrell was charged with first degree burglary for this offense. The charging document also alleged, among other things, that Mr. Burrell had suffered two prior convictions in 2006,

1 thereby making him eligible for sentencing under California's Three Strikes law. The 2006
2 convictions stemmed from residential burglaries of other Santa Clara University students' homes.

3 Mr. Burrell pled guilty and was convicted in Santa Clara County Superior Court of first
4 degree burglary. He also admitted having suffered two prior convictions, one prior serious felony
5 conviction, and one prior prison term. At a bench trial, the court found true the allegation that he
6 had burglarized an occupied residence. After denying a motion under *People v. Superior Court*
7 *(Romero)*, 13 Cal. 4th 497 (Cal. 1996), to strike the prior convictions, the trial court sentenced Mr.
8 Burrell to a prison term of 25 years to life, plus a consecutive five-year term for a serious felony
9 enhancement.

10 Mr. Burrell appealed and petitioned for writ of habeas corpus in the California Court of
11 Appeal. The appellate court affirmed his conviction with a modification of the judgment as to a
12 sentencing matter, and denied his petition for writ of habeas corpus. *See* Resp. Ex. 8. Mr. Burrell
13 then petitioned for rehearing. After obtaining letter briefs, the California Court of Appeal filed an
14 unpublished opinion affirming the conviction and remanding on a sentencing matter not relevant to
15 the current habeas petition. *See* Resp. Ex. 12. The California Supreme Court denied Mr. Burrell's
16 petitions for review of the state appellate court's affirmance of his conviction and denial of his
17 habeas petition. *See* Resp. Exs. 14, 16.

18 Mr. Burrell then filed this action for a federal writ of habeas corpus. The lone claim in the
19 petition is that trial counsel provided ineffective assistance of counsel in he presentation of the
20 *Romero* motion at sentencing. Specifically, Mr. Burrell contends that his attorney "fail[ed] to
21 properly investigate, present, and argue at the sentencing hearing social background evidence which
22 was favorable towards a grant of relief from a 25 to life sentence." Docket # 1 at 8.

### III.   JURISDICTION AND VENUE

24 This Court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C.
25 § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the
26 conviction and sentence of a person convicted in Santa Clara County, California, which is within
27 this judicial district. 28 U.S.C. §§ 84, 2241(d).

## IV. EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. *See* 28 U.S.C. § 2254(b), (c). State judicial remedies have been exhausted for the claim in the petition.

## V. STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal habeas

court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" *Id.* at 409.

Here, the California Court of Appeal rejected Mr. Burrell's ineffective assistance of counsel claim without discussion. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 784-85 (2011) (one-sentence order denying habeas petition analyzed under §2254(d)); *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013) (order that discusses state law claim but not federal claim rebuttably presumed to be rejection on the merits and therefore subject to § 2254(d)). Mr. Burrell does not dispute that the state appellate court decided his claim on the merits.

## VI.   DISCUSSION

A.   Assistance Of Counsel At Sentencing

The Sixth Amendment's right to counsel guarantees not only assistance, but effective assistance, of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.* In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things. First, he must demonstrate that counsel's performance was deficient and fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The relevant inquiry under *Strickland* is not what defense counsel could have done, but rather whether his choices were reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998).

Respondent argues that relief must be denied because there is no clearly established Supreme Court authority delineating the standard to apply to ineffective assistance of counsel claims in the

noncapital sentencing context. The Ninth Circuit has so held in *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006).

> [T]he *Strickland* Court "expressly declined to 'consider the role of counsel in an ordinary sentencing, which ... may require a different approach to the definition of constitutionally effective assistance.'" *Cooper-Smith [v. Palmateer*, 397 F.3d 1236, 1244 (9th Cir. 2005)] (quoting *Strickland*, 466 U.S. at 686). Moreover, since *Strickland*, the Supreme Court has not delineated a standard which should apply to ineffective assistance of counsel claims in noncapital sentencing cases. *Id.* Therefore, as we said in *Cooper-Smith*, there is no clearly established federal law as determined by the Supreme Court in this context.

*Davis v. Grigas*, 443 F.3d at 1158; *accord Davis v. Belleque*, 465 F. App'x 728, 729 Cir. 2012) (as explained in *Davis v. Grigas*, "we cannot grant habeas relief under 28 U.S.C. § 2254(d)(1) based on a claim of noncapital sentencing [ineffective assistance of counsel] because there is no clearly established United States Supreme Court precedent applicable to that situation. The Supreme Court has not established any such precedent since that time"); *Vigil v. McDonald*, 456 F. App'x 649, 651 Cir. 2011) ("We are bound in the circumstances of this case by our decisions in *Davis [v. Grigas]* and *Cooper-Smith* until either we reverse them en banc or the Supreme Court clearly holds to the contrary"); *see also id.* at 651 n.1 (although Supreme Court recently suggested in the plea bargain case of *Premo v. Moore*, 562 U.S. 115, 131 S. Ct. 733, 742 (2011), that *Strickland* applies in all contexts, "[w]e question whether *Premo* is sufficient to call into question our decisions in *Davis [v. Grigas]* and *Cooper-Smith*"); *McAtee v. Hartley*, 2012 WL 259127, *1 (N.D. Cal. 2012) (Alsup, J.) (dismissing claim of ineffective assistance of counsel at sentencing for lack of clearly established federal law from Supreme Court); *Welker v. Hartley*, 2011 WL 2581379, *3-*4 (N.D. Cal. 2011) (Whyte, J.) (denying claim of ineffective assistance of counsel at sentencing for lack of clearly established federal law from Supreme Court and, alternatively, for lack of merit if *Strickland* applied to sentencing proceedings). Bound as it is to follow the controlling precedent of *Davis v. Grigas* and *Cooper-Smith*, this Court concludes that § 2254(d)(1) bars habeas relief because there is no clearly established law from the U.S. Supreme Court on point.

The majority opinions in both *Davis v. Grigas* and *Davis v. Belleque* were accompanied by concurrences from judges who were of the view that *Strickland* does apply to formal noncapital

1  sentencing proceedings.  *See Davis v. Grigas*, 443 F.3d at 1159 (Graber, J., concurring); *Davis v.*
2  *Belleque*, 465 F. App'x at 729 (Paez, J., concurring).  In the interest of completeness of analysis and
3  to facilitate any appellate review, this Court will, like the concurring judge in *Davis v. Belleque*,
4  assume for purposes of argument that *Strickland* applies and then consider whether Mr. Burrell's
5  claim satisfies the *Strickland* standards.

6  B.     The *Romero* Motion That Was Made In Mr. Burrell's Case

7       In a *Romero* motion, a criminal defendant seeks to have a prior conviction dismissed or
8  stricken so that it cannot be considered for purposes of imposing a sentence under California's Three
9  Strikes law.[1]  *See Romero*, 13 Cal. 4th 497.  *Romero* had held that "a trial court may strike or vacate
10 an allegation or finding under the Three Strikes law that a defendant has previously been convicted
11 of a serious and/or violent felony, on its own motion, 'in furtherance of justice' pursuant to Penal
12 Code section 1385(a)."  *People v. Williams*, 17 Cal. 4th 148, 158 (Cal. 1998); *see Romero*, 13 Cal.
13 4th at 507.  In deciding a *Romero* motion, the state court must consider "whether, in light of the
14 nature and circumstances of his present felonies and prior serious and/or violent felony convictions,
15 and the particulars of his background, character, and prospects, the defendant may be deemed
16 outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not
17 previously been convicted of one or more serious and/or violent felonies."  *Williams*, 17 Cal. 4th at
18 161.

19       In Mr. Burrell's case, trial counsel filed a written *Romero* motion and presented oral
20 argument in support of that motion.  *See* CT 73-85; RT 44-47, 50.  Trial counsel's written *Romero*

---

[1] California's Three Strikes law, which appears in California Penal Code section 667(b)-(i), was enacted by the Legislature and became effective March 7, 1994.  The heart of the Three Strikes law is section 667(e), which prescribes increased terms of imprisonment for defendants who have previously been convicted of certain "violent" or "serious" felonies as defined in section 667(d). A second strike defendant (with one prior felony conviction) receives "twice the term otherwise provided as punishment for the current felony conviction." Cal. Penal Code § 667(e)(1). A third strike defendant (with two or more prior felony convictions) receives an indeterminate term of life imprisonment, which includes a minimum term of the greatest of (1) "[t]hree times the term otherwise provided as punishment for each current felony conviction," (2) 25 years, or (3) the term determined by the court, including enhancements, under Penal Code section 1170 et seq. *Id.* § 667(e)(2). (A parallel version of the Three Strikes law was approved by the voters in the initiative process a few months after the Legislature's version was passed and appears at California Penal Code section 1170.12.)

motion emphasized that Mr. Burrell's lengthy criminal history[2] did not necessarily require a Three Strikes sentence. The motion discussed the applicable law, focusing on a particular case that supported the argument that it would not be an abuse of discretion to strike one of Mr. Burrell's prior convictions notwithstanding his extensive criminal history. The motion also discussed the current conviction and the prior strike convictions, with an emphasis on Mr. Burrell's lack of criminal sophistication and his willingness to admit to his criminal conduct. The *Romero* motion also focused on Mr. Burrell's social history, painting a picture of a terrible childhood that had contributed heavily to his untamed alcoholism, chronic homelessness, and lengthy criminal record. The motion also attempted to show that Mr. Burrell had tried, while in custody, to address his substance abuse problems: Mr. Burrell had completed a 16-month substance abuse treatment program during an earlier imprisonment, and had participated in substance abuse treatment programs while in jail. *See* CT 80-81. And the motion had attached to it a certificate showing Mr. Burrell's ongoing participation in the Strive Substance Abuse & Anger Management Program and a letter showing he had been accepted in to the M8-B New Life Program, the latter of which addressed the "never-ending cycle of addiction, violence and incarceration." CT 83, 84. Trial counsel also submitted a certificate of completion for a substance abuse treatment program at the *Romero* hearing. *See* RT 44 (court mentions receiving a certificate of completion "dated earlier this morning").

The prosecutor filed a written opposition and presented oral argument against the *Romero* motion. *See* CT 86-121; RT 47-50. The prosecutor argued in opposition to the *Romero* motion that Mr. Burrell was the sort of career criminal who fell squarely within the spirit of the Three Strikes law and should receive a Three Strikes sentence. The prosecutor pointed out that Mr. Burrell's criminal history included seven felony convictions, 15 misdemeanor convictions, and numerous parole violations – none of which had dissuaded Mr. Burrell from his criminal activities. The 41-year old defendant, according to the prosecutor, had no significant period of law-abiding conduct for at least two decades; moreover, Mr. Burrell's criminal activities were getting more serious, and his

---

[2] At the time of the *Romero* hearing, Mr. Burrell was 41 years old. His criminal history record was 28 pages long. *See* CT 155-184.

efforts to address his substance abuse problem occurred only when he was in custody and facing life in prison. The prosecutor also stressed that Mr. Burrell had avoided a Three Strikes sentence in 2009 only due to prosecutorial discretion and nonetheless continued with his alcohol abuse and criminal conduct, including committing the current crime while on parole. The prosecutor argued that Mr. Burrell's bad childhood did not take him outside the spirit of the Three Strikes law.

At the hearing, defense counsel argued for a two-strike sentence of 14 years at 85% (i.e., with dismissal of one of the prior convictions), and the prosecutor argued for a three-strike sentence of 25 years to life (i.e., with dismissal of neither of the prior convictions). The court denied the *Romero* motion and sentenced to Mr. Burrell to 25-to-life plus determinate terms for other sentence enhancements. The trial court noted that Mr. Burrell's entry of his plea early in the proceedings and work toward sobriety while in custody were positive factors, but there were a number of factors of concern to the court that plainly outweighed those factors. First, the current offense was committed while Mr. Burrell was on parole for the priors, which usually wasn't the situation when this judge had granted *Romero* motions in previous cases. RT 52. Second, the current offense was a strike offense, which usually wasn't the situation when this judge had granted *Romero* motions in previous cases. *Id.* Third, and most importantly, Mr. Burrell had a felony in 2009 that could have been a Three Strikes case but the district attorney "got rid of the strikes and gave [Mr. Burrell] another chance," RT 53, of which Mr. Burrell failed to take advantage. Mr. Burrell had been out of prison only three months when he committed the current offense. In the court's view, that failure to take advantage of having been given a second chance in 2009 plus his lengthy criminality and numerous parole violations "certainly tips the scale in this case." RT 53-54. The court also stated, "I think that, under any circumstance based on the totality of the circumstances in this case, that it is just not an appropriate case for the court to grant you that, your relief." RT 54.

C.   Counsel's Alleged Deficiencies Regarding The *Romero* Motion

Mr. Burrell argues that trial counsel failed to adequately investigate, prepare and present helpful social background evidence about him for the *Romero* motion. Mr. Burrell's post-conviction counsel presented a declaration in the state habeas proceedings in which he stated that he was able to obtain without difficulty five items that trial counsel should have included in the *Romero* motion,

8

mostly using information from trial counsel's file. *See* Resp. Ex. 7 (Verified Petition For Writ Of Habeas Corpus filed in California Court of Appeal), at Ex. A.  First, there was a declaration from Fred McDonald, an instructor for the Strive Substance Abuse & Anger Management Program at the county jail.  Mr. McDonald declared that Mr. Burrell had attended the Strive course from July 6, 2010 until October 6, 2010, was a "dedicated student" and "active participant" who seemed to take "his commitment to becoming sober seriously."  Resp. Ex. 7 at Ex. B.  Second, there was a letter from Kimberley Linser, an adult education instructor at the county jail for the "Effective Listening/ Anger Management/Conflict Resolution Course."  She stated that Mr. Burrell had taken that course from April 13, 2010 through July 9, 2010; he "was consistent in his participation in class and has demonstrated a unique understanding of the concepts covered in my course."  Resp. Ex. 7 at Ex. C. Third, there was a letter from Michelle Dusel, the adult education principal at the county jail, who described Mr. Burrell's educational efforts.  She stated that Mr. Burrell had taken a GED test in 1997, had passed one test in the series that was no longer given and had to start over with a new series of tests; and Mr. Burrell had accumulated 15 hours of study in a GED class he enrolled in on June 1, 2009, and had enrolled in another GED class on October 13, 2010 (two days before the *Romero* hearing) in which he eventually accumulated 30 hours of study.  Resp. Ex. 7 at Ex. D. Fourth, there was a declaration from Clinton Johnson, who had worked as a supervisor at Folsom Convalescent Hospital in 1997-1998, when Mr. Burrell worked there doing janitorial work and laundry.  Mr. Johnson thought Mr. Burrell was a hard worker and committed to working with the elderly.  Mr. Johnson also stated that Mr. Burrell later worked at two other eldercare facilities. Resp. Ex. 7 at Ex. E.  Fifth, there was a declaration from Mr. Burrell, who stated that he had worked at Folsom Convalescent Hospital in 1997 and 1998, had worked at another eldercare facility for about three months in 2006, and had worked in construction for about five months in 2009.  Resp. Ex. 7 at Ex. F.

  Mr. Burrell's post-conviction counsel also presented evidence in the state habeas proceedings that trial counsel's case file included an envelope with documentation from an interview of Mr. Burrell conducted by trial counsel's paralegal.  In that envelope were documents created by the paralegal to prepare Mr. Burrell's social history for the *Romero* motion, letters from instructors

1  McDonald and Linser about Mr. Burrell's enrollment in the substance abuse and effective listening
2  programs, and contact information about his prior employment – all of which allowed post-
3  conviction counsel to obtain the evidence described in the preceding paragraph without difficulty.
4  *See* Resp. Ex. 7 at Ex. A.

5  Post-conviction counsel attached to his declaration in the state habeas proceedings emails
6  that disclosed the following about his communications with trial counsel about the *Romero* motion.
7  Trial counsel said that a senior paralegal compiled the information for the social history in the
8  *Romero* motion, and that trial counsel would review documents and add any that she believed were
9  relevant to the *Romero* motion. Trial counsel was unsure whether she had submitted a final
10 completion certificate for Mr. Burrell's substance abuse course at the jail – it turns out that she did,
11 *see* RT 44 – but believed that "his participation in this course would not have changed the Court's
12 decision as the Court denied the Romero based upon Mr. Burrell's being on court probation for theft
13 at the time of this offense, having had his 'last chance' to stay out of trouble and then committing
14 the new burglary offense." *See* Resp. Ex. 7 at Ex. A1. In response to post-conviction counsel's
15 inquiry about her efforts to examine Mr. Burrell's work history, trial counsel stated that a senior
16 paralegal had compiled the information for the social history, and that trial counsel had "personally
17 interviewed Mr. Burrell when I took over representation of his case. He informed me that he was
18 out of work and homeless and suffering from alcoholism at the time of the offense. His recent
19 employment is a relevant factor. His continued theft was a detriment." *Id.*

20 D.   Analysis of Ineffective Assistance of Counsel Claim

21 Assuming arguendo that a criminal defendant has a Sixth Amendment right to the effective
22 assistance of counsel at the sentencing stage of the proceedings, *Strickland* requires him to show
23 both that counsel's performance was deficient and that the deficient performance prejudiced his
24 defense. A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of
25 counsel claims under § 2254. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1410-11 (2011). The
26 "question is not whether counsel's actions were reasonable. The question is whether there is any
27 reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S.
28 Ct. at 788. As Mr. Burrell's claim was rejected by the California Court of Appeal without

explanation, this court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 786.

The California Court of Appeal reasonably could have concluded that Mr. Burrell's ineffective assistance of counsel claim failed on both the deficient performance and prejudice prongs of the *Strickland* test due to the marginal value of the evidence counsel omitted from her *Romero* motion.

Even viewing it generously, the evidence that was not included in the *Romero* motion was only mildly favorable. The five new items were like pebbles being placed on one side of a scale on which the other side of the scale held the bag of concrete that was Mr. Burrell's criminal history. Evidence that Mr. Burrell took the "Strive Substance Abuse & Anger Management Program" in jail was already before the court at the time of the *Romero* motion. The additional new evidence that the instructor had a favorable view of Mr. Burrell's commitment to reform would likely have made no real difference. The evidence that Mr. Burrell had taken a course in effective listening/anger management/conflict resolution was new, but realistically would not have made any difference to the analysis, given his 20+ years of criminal conduct with a recurring theme of intoxication during such offenses. In some ways, the new evidence actually highlighted the *prosecutor's* position that this 41-year old defendant had done little favorable with his life. For example, the new employment evidence that showed that Mr. Burrell had worked for about eight months in the last twelve years also implicitly showed that he had been unemployed about 95% of the time. The minimal employment he had managed to obtain was unskilled work. Further, trial counsel had a strategic reason for her choice not to present the employment evidence, i.e., it was not evidence of *recent* employment, which she thought was the relevant kind of employment. The evidence about Mr. Burrell's educational efforts also was quite modest, as it showed he had taken a GED test in 1997, did not fully pass it, and did not take any more classes for 12 years. By the time of the *Romero* hearing, Mr. Burrell had done 15 hours of GED classes in 2009 and had just enrolled in a GED class in which he would eventually do 30 more hours of GED study. (The probation officer's

report stated that Mr. Burrell had dropped out of high school in the 12th grade.  CT 127.)  This evidence indicates that Mr. Burrell made no effort to obtain his GED except while he was in custody, and even those efforts were minimal in light of the substantial amount of time he had spent in custody.

Trial counsel's *Romero* motion tried to evoke sympathy for Mr. Burrell by emphasizing the difficult childhood he had experienced.  She did, however, mention that he had tried to address his substance abuse problems by completing a 16-month substance abuse treatment program earlier in prison and currently in jail.  The state habeas court reasonably could have viewed trial counsel's choice to take that approach and not to include the five items of evidence Mr. Burrell now identifies as a reasonable strategic choice.  Trial counsel's presentation did not deprive the trial court of any significant information helpful to its determination whether Mr. Burrell was outside the spirit of the Three Strikes law in light of the nature and circumstances of his felonies and "the particulars of his background, character and prospects."  *Williams*, 17 Cal. 4th at 161.  The state habeas court reasonably could have determined that Mr. Burrell had not overcome the "'strong presumption'" that counsel's attention to certain issues to the exclusion of others reflected her reasonable professional judgment.  *See Cullen v. Pinholster*, 131 S. Ct. at 1407 (2011) ("But *Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment").

Furthermore, the state habeas court reasonably could have concluded that trial counsel's omission of the five items of evidence regarding Mr. Burrell's social background also did not result in any prejudice.  There was no reasonable probability of a different outcome had that evidence been included with the *Romero* motion.  Mr. Burrell's chances on the *Romero* motion were slim due to his 20+ years of criminal conduct.  *See* CT 130 (probation officer's report summarizing criminal record as including "9 felony convictions involving: Petty Theft With a Prior (2 convictions), First Degree Burglary (2 convictions), Transportation/Distribution of Marijuana over 1 Ounce/28.5 Grams (2 convictions), Possession for Sale of Marijuana, and Possession of Controlled Substance (2 convictions); and 12 misdemeanor convictions involving: Drunk in Public (3 convictions), Theft (5 convictions), Trespassing, Failure to Report for Work Release Program, and Violation of Promise to

1  Appear"). And those chances decreased substantially when the trial court realized Mr. Burrell had
2  squandered a second chance he received a year earlier (when the prosecutor declined to prosecute a
3  theft as a Three Strikes case), and had only been out of custody three months when he committed the
4  current offense.

5        Contrary to Mr. Burrell's repeated suggestions, the trial judge's comments do not indicate
6  that the trial judge thought this case presented a close call and certainly do not suggest the trial judge
7  would have reached a different ruling had he seen the evidence that Mr. Burrell now identifies. Mr.
8  Burrell misinterprets a key statement by the trial court when he argues that "the trial court plainly
9  considered the matter a close call, since it described petitioner's criminal history as 'tip[ing] the
10 scale in this case.'" Docket # 9 at 9; *see also* Docket # 1 at 9 ("case was already a close one"), 14
11 (the factors relating to recent criminal history "concluded the court, 'tip[] the scales'"), and 23
12 ("While it is true that Judge Cunningham stated that petitioner's short period of probation prior to
13 his instant offense 'tips the scale in this case,' that language in itself suggests that the decision was
14 seen by the court as a close call"). What the trial judge actually said was this: "I have somebody
15 who commits two strikes, which you are still on parole for, and in 2009, commits another felony,
16 where both strikes are stricken and you get a break there. And you're back three months after your
17 release from custody. I think that fact, along with the fact that you have been in prison or parole
18 since 1998 and that you had six years of a parole period with nine violations – which I also didn't
19 know about – *certainly tips the scale in this case*." RT 53-54 (emphasis added). The trial court's
20 comments indicate that Mr. Burrell's criminal history was an overwhelmingly bad factor in the
21 *Romero* analysis, rather than that this was a close call for the trial court. *See* RT 54 ("I think that,
22 under any circumstance based on the totality of the circumstances in this case, that it is just not an
23 appropriate case for the court to grant you that, your relief").

24       It would not have been an unreasonable application of *Strickland* for the California Court of
25 Appeal to determine that there was neither deficient performance nor resulting prejudice when trial
26 counsel omitted from the *Romero* motion the evidence of Mr. Burrell's modest efforts to obtain a
27 GED, Mr. Burrell's extremely limited work history, and the favorable reviews in Mr. Burrell's
28

recent classes regarding substance abuse. Mr. Burrell is not entitled to relief on his claim that he received ineffective assistance of counsel.

E.      A Certificate Of Appealability Will Not Issue

Mr. Burrell has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and this is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is **DENIED**.

## VII.    CONCLUSION

The petition for writ of habeas corpus is **DENIED** on the merits. The Clerk shall close the file.

IT IS SO ORDERED.

Dated: October 21, 2014

_____
EDWARD M. CHEN
United States District Judge